## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

La'marr Henderson,                     )
    Plaintiff,                        )
                  )
v.                                     )          1:21cv 672 (TSE/JFA)
                  )
Harold Clarke, et al.,                 )
    Defendants.                      )

### MEMORANDUM OPINION

La'marr Henderson ("Henderson" or "Plaintiff"), a Virginia inmate proceeding pro se,

filed this civil action under 42 U.S.C. § 1983 alleging defendants Harold Clarke, B. Cabell, and

M. Bryant violated his Fourteenth and Eighth Amendment rights by not correcting the Virginia

Department of Corrections' ("VDOC") Court and Legal Section's miscalculation of his

accumulated good time and anticipated parole eligibility date, which caused him not to be

considered for parole in 2021. [Dkt. No. 1 at 9, 12].[1] On February 3, 2022, the Court granted

defendant Clarke's motion to dismiss [Dkt. No. 16], and the remaining defendants filed a motion

for summary judgment on March 7, 2022. [Dkt. No. 21]. Henderson was advised of his right to

file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), in

accordance with Local Rule 7(K), and he filed responses on March 24, 2022 [Dkt. No. 23-25],

which included a motion to dismiss the motion for summary judgment. [Dkt. No. 24].

The Court reviewed the pleadings, affidavits, and documents from each party and by

Order dated April 1, 2022, directed the defendants to provide a supplemental pleading explaining

---

[1] Henderson's requested relief seeks a properly calculated parole eligibility date; a parole hearing; and monetary damages for the alleged delay in his parole hearing. [Dkt. No. 1 at 25]. Plaintiff attempted to grieve this matter and was directed to contact the VDOC Court and Legal Section. He did and the VDOC Court and Legal Section directed him to file a grievance. [Id. at 11-17, 19-24]. The evident bureaucratic impasse, which the defendants do not explain, negates any concern of exhaustion of administrative remedies.

how Henderson's original anticipated parole eligibility date in 1994 (July 4, 2010) was calculated and the changes to his anticipated parole eligibility date caused by his new convictions, the changes in the rate at which he earned good time and sentence credits, and his several losses of good time for institutional infractions. [Dkt. No. 26]. The defendants submitted a supplemental pleading, with an affidavit, on May 5, 2022 [Dkt. No. 30], and Henderson filed his opposition to the supplemental pleading on May 20, 2022. [Dkt. No. 31]. The matter is, therefore, ripe for disposition. Based upon the defendants supplemental pleading and affidavit, it is evident that there is no dispute of material fact, that the VDOC Court and Legal Section correctly calculated Henderson's anticipated parole eligibility date, and that the motion for summary judgment must be granted.

## I. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he purpose of Rule 56 is to 'enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citation omitted). The Defendants, pursuant to Rule 56 and Local Rule 56, have submitted a statement of undisputed facts based upon an affidavit and documents from the VDOC Court and Legal Section. Henderson's responses are conclusory and do not provide specific evidence to dispute any of the VDOC Court and Legal Section's calculations or material facts in the defendants' statement of undisputed facts. Fujitsu Ltd v. Fed. Express Corp., 247 F.3d 423, 428 (2d Cir. 2001) (a party "may not rely on conclusory allegations or unsubstantiated

speculation").[2] To the contrary, the pleadings establish that the facts are not in dispute and that the "dispute" concerns the application of two sentence credit systems. The Good Conduct Allowance ("GCA") system applies to parole eligible offenses that occurred before January 1, 1995, and the Earned Sentence Credit ("ESC") system which applies to parole ineligible offenses that occurred on or after January 1, 1995. Where a decision turns on the application of a statute to undisputed facts, the decision is one of law and must be decided by the court. Stissi v. Interstate & Ocean Transport Co. of Philadelphia, 765 F.2d 370, 374 (2d Cir. 1985).

*1. Background*

Henderson was convicted on April 27, 1994 of six felonies (aggravated malicious wounding, robbery, attempted capital murder, and three counts of use of a firearm in the commission of a felony), and sentenced to life for aggravated malicious wounding, 40 years in prison for robbery, life for the attempted capital murder, two years in prison for one use of a firearm conviction and four years on each of the other use of a firearm convictions. [Dkt. No. 21-1 at 1-2]. Henderson entered the VDOC in 1994 under the "old law" [Dkt. No. 1 at 5-6, 8-9], which means that his 1994 sentences are calculated under the GCA system. Henderson can earn a maximum of 10 days of good time for every 30 days served. See Va. Code Ann. § 53.1-151. Under the GCA, however, because he had more than one life sentence, he was not eligible for parole until after he served 20 years. See Va. Code Ann. § 53.1-151(D).[3] Henderson entered the

---

[2] Plaintiff's March 24, 2022 response to the original motion for summary judgment is sworn [Dkt. Nos. 23-25], but his original complaint and the response to the defendants' supplemental pleading are not sworn. [Dkt. Nos. 1, 31]. His responses, however, do not provide specific evidence that disputes the facts sets forth in the VDOC Court and Legal Section's affidavit, but instead simply argues that the VDOC Court and Legal Section misapplied the statutes in calculating his parole eligibility date.

[3] Section 53.1-151(D) provides that

A person who has been sentenced to two or more life sentences, except a person to whom the provisions of subsection B1, B2, or E of this section are applicable, shall be eligible for parole after serving twenty years of imprisonment, except that if either such sentence, or both, was or were for a Class 1 felony violation, and he is not otherwise ineligible for parole pursuant to

VDOC on June 29, 1994 and he earned 10 days for every 30 days served (GCA Class Level III). [Dkt. Nos. 1 at 8; 30-1 at 3, 16; 31 at 2].[4]

Henderson's first Legal Update from the VDOC Court and Legal Section on July 14, 1994 calculated his anticipated parole eligibility date as July 4, 2010, which was approximately 16 years. The Legal Update also explained why it was 16 years instead of 20 and informed Henderson that the 16 years was "based upon the *assumption* that [he would] continue to earn good time at [his] present earning level and that [he would] not have earned good time taken from [him] by an adjustment committee action as a result of misbehavior" and that the "[l]*oss of earned good time or a change in [his] good time earning level may cause [his] anticipated dates to change*." [Dkt. No. 30-1 at 3-4, 16] (emphasis added).[5] In 2000, 2007, and 2012, however, the "assumptions" changed because Henderson was convicted of parole ineligible offenses that did not fall under the GCA system. The new convictions were covered by a different system by the ESC system [Dkt. No. 30-1 at ¶¶ 12-13]; removed Henderson from the GCA system until the parole ineligible offenses were satisfied; impacted his GCA Class Level; and changed his parole eligibility date for the 1994 offense, which was pushed back.[6] The imposition of a parole

---

subsection B1, B2, or E of this section, he shall be eligible for parole only after serving thirty years.

[4] When an inmate has multiple sentences to serve, the sequence in which his sentences are served "is subject to change as it is 'an arbitrary, mechanical thing subject to subsequent variation and adjustment....' [and] a specific change to the sequence in which a prisoner must serve multiple sentences does not implicate federal due process protections." Abdul-Hamid v. Angelone, No. 00-846-AM, 2001 U.S. Dist. LEXIS 27082, *14 (E.D. Va. Mar. 9, 2001), appeal dismissed, 22 F. App'x 207 (4th Cir. 2001) (quoting Rowe v. Peyton, 383 F.2d 709, 718 (4th Cir. 1967); Shockley v. Slayton, 333 F. Supp. 868, 869 (W.D. Va. 1971) (holding there is no constitutional or statutory requirement that sentences must be served in the order in which they are imposed); see also Brown v. Virginia Dep't of Corrections, 886 F. Supp. 531, 534 (E.D. Va. 1995) (holding that the Constitution does not require a state to allow an inmate to serve his sentences in the order of his preference as opposed to established policy).

[5] Henderson received Legal Updates on a regular basis from July 14, 1994 through October 4, 2017, as well as the April 14, 2022 Summary Audit attached to the defendants' affidavit. [Dkt. No. 30-1 at 16-52].

[6] While pre-January 1, 1995 sentences (such as his two life sentences) are computed under the GCA system, any later sentences (such as his several convictions while he was in VDOC's custody) are computed under the ESC system. See Perry v. Clarke, Case No. 7:12cv245, 2012 U.S. Dist. LEXIS 182646, *3-4 (W.D. Va. Dec. 28, 2012) (noting that Virginia has two different "good time systems," the GCA and the ESC, and that the ESC applies to

4

ineligible offense not only removed Henderson from the GCA system and placed him in the ESC system, but it also interrupted the running of the 20-year time period that he had to satisfy before he is eligible for parole on his original 1994 sentences. During those interruptions, he only earned good time under the ESC system, which was applied to his parole ineligible sentences, and he did not earn good time credits under the GCA. Once his parole ineligible sentence was satisfied, through time served and the application of ESC credits, Henderson returned to the GCA system.

Henderson's argument demonstrates he does not understand the start-stop interplay between the GCA and ESC sentences. Henderson argues that the approximate 16 years between when he was received into the VDOC, June 29, 1994, and his original anticipated parole eligibility date, July 4, 2010, is a constant [Dkt. No. 25 at 2], and assumes that when the new parole ineligible sentences were imposed on July 19, 2007, that he had satisfied 13 of the 16 years. Ignoring the interplay of the GCA and ESC systems, he concludes that since the defendants admit he satisfied his parole ineligible sentences on May 7, 2018, he only had three years to serve until he was parole eligible, which means he should have been considered parole eligible in 2021. [Dkt. No. 25 at 3-4]. The 16-year period, however, was not a constant, but simply a projection that the VDOC calculated based upon assumptions that did not include his new convictions, losses of good, and changes to his GCA and ESC Class Levels and the impact

---

sentences imposed for offenses committed on or after January 1, 1995), appeal dismissed, 554 F. App'x 213 (4th Cir. 2014). When a parole ineligible sentence is imposed, by operation of law, Virginia Code §§ 53.1-202.2 through 53.1-202.4, Henderson falls under the ESC system for the duration of that sentence, which interrupts his parole eligible sentence and his ability to earn good time credits under the GCA. Plaintiff admits that he had parole ineligible sentences that interrupted his parole eligible sentences [Dkt. No. 25 at 3], that his "new sentences must be served in their entirety," and that his new sentences placed his existing sentences (the life sentences) "on hold." [Dkt. No. 25 at 3]. By his own admission, his argument that he cannot be an "old law" prisoner (under the GCA system) and a "new law" prisoner (under the ESC system) is incorrect. Plaintiff's responses rely on similar conclusory assertions of error that fail to address the numerous events and interruptions to his ability to earn good time credits under the GCA system over the last 28 years, the adjustments to his ESC Class Levels while he was serving parole ineligible sentences, and his loss of good time for institutional infractions.

5

those events had on the calculation of his anticipated parole eligibility date during the period from 1994 through 2007. Plaintiff's 16-year period from which he derived a three year left to serve figure is the result of his failure to address the fact that during the 24-year period from 1994 through 2018, he lost accumulated good time for institutional infractions, he did not earn any good time when he was in GCA Class Level IV, and service of his 1994 sentences was interrupted by new parole ineligible sentences and fluctuations in his ESC Class Levels. [Dkt. 30-1 at ¶¶ 8, 9, 11, 12, 13, 15, 20, 22, 23, 25].[7] Henderson's dispute is not one of fact but flows from his incorrect application of an admittedly complex scheme involving the application of the GCA and ESC statutory schemes that result in his anticipated parole eligibility date being advanced or pushed back depending on the event. See infra at 17-20.

   *2. The Undisputed Facts*

   Because Henderson has not rebutted or contested the defendants' undisputed facts with specific evidence, the Court accepts defendants' statement of undisputed facts as true. See Integrated Direct Mktg., LLC v. May, 129 F. Supp. 3d 336, 345 (E.D. Va. 2015) ("facts identified by the moving party ... are admitted, unless ... controverted in the statement of genuine facts in opposition to the motion") (citation omitted)), aff'd, 690 F. App'x 822 (4th Cir. 2017); see also

---

[7] For example, a November 28, 1995 institutional conviction resulted in Henderson losing 90 days of accumulated good time and a temporary reduction in his GCA Class Level that caused his anticipated parole eligibility date to be pushed back from July 4, 2010 to August 10, 2010. A similar recalculation occurred for each loss of accumulated good time and each change in his GCA Class Level. His failure to address changes in his GCA Class Levels is apparent in the demotion to GCA Level IV from July 1, 2005 through June 29, 2006 (363 days), during which he did not earn any GCA good time. [Dkt. No. 30-1 at 10]. His anticipated parole eligibility date was recalculated from July 23, 2011 to July 26, 2012, adding approximately one full year to his anticipated parole eligibility date. [Id.]. Recalculations, however, did not always result in Henderson's anticipated parole eligibility date being pushed back. For instance, in 2002 he was returned to GCA Class Level III from GCA Class Level IV on June 29, 2002. The increase in his GCA Class Level advanced his parole eligibility date from December 23, 2012 to June 25, 2011. [Id. 30-1 at 9]. Another example of an anticipated parole eligibility date being advanced occurred when his ESC level was elevated from ESC Class Level III to ESC Class Level II on June 29, 2016 while he was serving a parole ineligible sentence. The increase in Class Level raised his good time earning rate to 3 days for every 30 days served and reduced his anticipated parole eligibility date from July 20, 2022 to June 18, 2022. [Id. 30-1 at 13].

JDS Uniphase Corp. v. Jennings, 473 F. Supp. 2d 705, 707 (E.D. Va. 2007) (movant's statement of undisputed facts is deemed admitted where response fails to "identify with any specificity which facts, if any, were disputed") (citation omitted (emphasis added).[8] The undisputed facts are as follows:

1.      Plaintiff entered the VDOC on June 29, 1994 to serve sentences for six felonies: malicious wounding, life in prison; robbery, 40 years in prison; use of a firearm, 2 years in prison; use of a firearm, 4 years in prison; attempted capital murder, life in prison; and use of a firearm, 4 years in prison. [Dkt. No. 30-1 at 16]. He had 385 days jail credit from time spent in the local jail and was assigned to GCA Class Level III, which meant he received 10 days of good time credits for every 30 days serve; and half of his good time credits are applied toward determining his anticipated parole eligibility date. [Id. at 16-17]. On July 14, 1994, the VDOC calculated his parole eligibility date as July 4, 2010.

2.      An inmate's anticipated discretionary parole eligibility date is the date that he becomes eligible to be considered for release on discretionary parole, which is a projected date based upon the assumption that various factors, including his current good time earning level, remain constant. A change in his good time earning level, a loss of good time or the addition of new sentences impact the determination of his anticipated discretionary parole eligibility date. Only half of an inmate's good time credits earned are applied toward his anticipated discretionary parole eligibility date. Due to Henderson's' multiple life sentences, Virginia Code

---

[8] Plaintiff has not established any error in the defendants' averments as to how much good time he earned; when he earned it and when he was under each good time system; when he lost good time credits; and when changes in his GCA or ESC Class Levels occurred. Because he has not disputed these issues, it would serve no purpose to recount all of the details of each event over the last twenty-eight years of his incarceration that impacted his accumulated good time, changes in the amount of good time he earned, or the interruptions of his mandatory 20-year period before he becomes parole eligible. The undisputed facts will note the changes in the amount of good time credits earned and lost, why the amount changed, and how the changes impacted his anticipated parole eligibility date.

§ 53.1-151(D) required that he serve a mandatory 20 years before he is eligible for discretionary parole. When he entered the VDOC, he had 6,823 days to serve until he became parole eligible.[9]

3.      While serving a parole eligible sentence, pre-January 1, 1995, Henderson earns good time under the GCA system and he earns between 0 to 30 days per month of good time depending upon his assigned class level. The class levels are as follows:

- GCA Class Level I, the inmate earns 30 days good time for every 30 days served;
- GCA Class Level II, the inmate earns 20 days good time for every 30 days served;
- GCA Class Level III, the inmate earns 10 days good time for every 30 days served; and
- GCA Class Level IV, the inmate earns 0 days good time for every 30 days served.

4.      While serving his life sentences, Henderson can earn no more than 10 days of good time for every 30 days served (GCA Level III). See Va. Code § 53.1-199.

5.      For the parole ineligible offenses committed on or after January 1, 1995, Henderson earned good time credits under the ESC system. The class levels are as follows:

- ESC Class Level I, the inmate earns 4.5 days of earned sentence credits for every 30 days served;
- ESC Class Level II, the inmate earns 3 days of earned sentence credits for every 30 days served;
- ESC Class Level III, the inmate earns 1.5 days of earned sentence credits for every 30 days served; and
- ESC Class Level IV, the inmate earns 0 days of earned sentence credits for every 30 days served.

Any sentence credits earned under the ESC program are applied to reduce parole ineligible sentences. [Id. at 11-12].

---

[9] The VDOC Court and Legal Section calculates the number of days to the third decimal point and some negligible differences in calculations of a day or so may occur because of rounding to a whole number. The figure submitted by the defendants' affidavit is 6,823.75 days. The Court uses the figure 6,823 days for simplicity.

6.      On November 28, 1995, Henderson was convicted of a disciplinary offense that resulted in his loss of 90 days of good time credits, being placed in isolation for 15 days, and a reduction from GCA Class Level III to GCA Class Level IV while in detention. [Dk. No. 30-1 at 21]. He was returned to GCA Class Level III on December 12, 1995. The disciplinary conviction and change in his GCA level resulted in his anticipated parole eligibility date being pushed back to August 10, 2010. [Id. at 4-5].

7.      As a result of additional disciplinary offenses on September 21, 1997, Henderson was demoted to GCA Class Level IV for 29 days and did not earn any good time credits during that period and resulted in his anticipated parole eligibility date being pushed back to September 13, 2010. [Id. at 6].

8.      Henderson was convicted in the Circuit Court of Sussex County, Virginia on January 14, 2000 for possession of marijuana and sentenced to a six-month parole ineligible sentence that interrupted the service of his mandatory 20-year period before he would be eligible for parole on the 1994 sentences. [Id. at 7]. When an inmate is serving both parole eligible and parole and ineligible sentences, the parole ineligible sentence must be served first. The length of time it takes to satisfy the parole ineligible sentence, is dependent on the inmate's assigned ESC Class Level. The parole ineligible sentence, therefore, has an indirect impact on the anticipated parole eligibility date. [Id. 7-8].

9.      While serving the parole ineligible sentence from Sussex County, Henderson was assigned to ESC Class Level IV and earned no sentence credits from January 14, 2000 through July 15, 2000. Due to the Sussex County parole ineligible sentence, he did not earn any time credits and his anticipated parole eligibility date was pushed back from September 13, 2010 to December 23, 2012. [Id. at 7, 28-29].

9

10.     Plaintiff was returned to GCA Class Level III on June 29, 2002, which advanced his parole eligibility date to June 25, 2011. [Id. at 9].

11.     On August 20, 2002, Henderson was convicted of a disciplinary offense and lost 60 days of earned good time. He was demoted to GCA Class Level IV and earned 0 days of good time until September 8, 2002 when he was moved back to GCA Class Level III and he remained at that level until July 5, 2005. The VDOC recalculated his anticipated parole eligibility date to July 23, 2011. [Id. at 9-10].

12.     The Institutional Classification Committee ("ICC") demoted Henderson to GCA Class Level IV on July 5, 2005, and he was later returned to GCA Class Level III on June 29, 2006. On August 25, 2006, the VDOC recalculated his anticipatory parole eligibility date to September 13, 2011 [id. at 10], which left him with 1769 days (4 years and 327 days) left to serve before he satisfied the 20-year period.

13.     On July 19, 2007, Henderson's 1994 parole eligible sentences were interrupted by new convictions in the Circuit Court of Buchanan County, Virginia—two counts of conspiracy to deliver drugs to a prisoner . The state court sentenced him to ten years in prison on each count and ordered that the sentences be served concurrent with each other. [Id. at 11].

14.     As a result of his Buchanan County convictions, Henderson was placed in ESC Class Level IV beginning October 30, 2007. His new parole ineligible sentences resulted in his anticipated parole eligibility date being pushed back from September 13, 2011 to May 23, 2022. He was elevated to ESC Class Level III on June 29, 2009, and because he was earning earned sentence credits against his parole ineligible sentence, his anticipated parole eligibility date was advanced from May 23, 2022 to April 25, 2022. [Id. at 11-12].

15.     On August 12, 2009, due to a disciplinary conviction, Henderson was demoted to ESC Class Level IV. The change in his ESC Class Level resulted in his anticipated parole eligibility date being pushed back to May 20, 2022. [Id. at 12, 43].

16.     On April 12, 2012, Henderson was convicted in the Circuit Court of Wise County, Virginia for possession of a cellular telephone by a prisoner and sentenced to one year in prison. He was placed in ESC Class Level IV for his new parole ineligible sentence [id. 12, 45], which resulted in his anticipated parole eligibility date being pushed back to May 20, 2023. [Id. at 12].

17.     On June 29, 2015, Henderson was elevated to ESC Class Level III, and began earning sentence credits that would apply toward his parole ineligible sentences, and his anticipated parole eligibility date for his 1994 sentences was advanced from May 20, 2023 to July 20, 2022. [Id. at 13].

18.     On June 29, 2016, Henderson was elevated to ESC Class Level II, which increased the rate he earned sentence credits that would apply to his parole ineligible sentences. His anticipated parole eligibility date was advanced to June 18, 2022 from July 20, 2022. [Id.].[10]

19.     On June 29, 2017, while still serving the parole ineligible sentences, Henderson was demoted to ESC Class Level III, which reduced the amount of earned sentence credits that would apply against his parole ineligible sentences. The change in his ESC Class Level resulted in his anticipated parole eligibility date being pushed back to July 2, 2022. [Id. 13-14].

20.     On May 7, 2018, Henderson satisfied the remainder of his parole ineligible sentences, and he had 1517 days (approximately, 4 years and 57 days) left to serve until he

---

[10] Henderson characterizes this event, being elevated to ESC Class Level II, as an error that he pointed out to the VDOC Court and Legal Section because he was under the "old law" and could not be elevated past GCA Level III. [Dkt. No. 25 at 4]. Plaintiff then states that the VDOC Court and Legal Section "corrected" their mistake in 2017 when he was returned to ESC Class Level III in 2017. [Id.]. Plaintiff's point is incorrect because he fails to comprehend that in 2016 and 2017, he was in the ESC system and not the GCA system because he was serving parole ineligible sentences.

satisfied the 20-year period be for he would be parole eligible on his 1994 sentences. [Id. at 14]. Henderson was placed in GCA Class Level III, and the satisfaction of the parole ineligible sentences did not alter his anticipated parole eligibility date, July 2, 2022. [Id.].

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Here, the defendants have met their burden of proof, the non-moving party must produce specific facts to generate a disputed issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). While the court will view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party, Porter v. U.S. Alumoweld Co., 125 F.3d 243, 245 (4th Cir. 1997), nevertheless, "[o]nly disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

As noted, Henderson has not disputed the material facts with any specific evidence. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990) (the non-moving party may not defeat a properly supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit"); see also Local Civil Rule 7(K)(3) (to defeat a dispositive motion, a pro se party "must identify all facts stated by the moving party with which the pro se party disagrees and must set forth the pro se party's version of the facts by offering affidavits ... or by filing sworn statements....").[11]

---

[11] "Generally, an affidavit filed in opposition to a motion for summary judgment must present evidence in substantially the same form as if the affiant were testifying in court." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996) (citing Fed. R. Civ. P. 56(e)). Affidavits must "be made on personal knowledge, set out facts admissible in evidence, and show that the affiant is competent to testify on the matters

Unsupported speculation is not enough to withstand a motion for summary judgment. See Ash v. United Parcel Serv., Inc., 800 F.2d 409, 411-12 (4th Cir. 1986). Similarly, "[t]he mere existence of some alleged factual dispute" cannot defeat a motion for summary judgment; the dispute must be both "material" and "genuine," meaning that it "might affect the outcome of the suit under the governing law." Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001) (emphasis omitted). "Specific evidence means more than 'conclusory allegations or unsubstantiated speculation.'" Wallace v. AMTRAK, 5 F. Supp. 3d 452, 465 (S.D.N.Y. 2014) (quoting Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998)).

### III. Analysis

In his complaint, Henderson alleges that his "good time credits" were not being properly calculated, which caused his anticipated parole eligibility date to be miscalculated, and that the defendants violated his Fourteenth and Eighth Amendment rights because the defendants failed to take corrective action when he pointed out the miscalculations to them. The defendants seek summary judgment asserting that Plaintiff's good time credits under the GCA, his earned sentence credits under the ESC (for parole ineligible sentences), and his anticipated parole eligibility date were all properly calculated. As indicated, Henderson has not disputed the material facts, and his legal arguments fail to recognize and take into account the interplay between the GCA system, which applies to his 1994 sentences, and the ESC system that applies to his post-January 1, 1995 offenses that are calculated under the ESC system. Henderson's arguments have no merit.

*A. Due Process*

---

stated." Harris v. Mayor & City Council of Baltimore, 429 F. App'x 195, 198 n.5 (4th Cir. 2011). Additionally, "summary judgment affidavits cannot be conclusory ... or based upon hearsay." Evans, 80 F.3d at 962.

When a state creates a protected liberty interest in good-time credits, the inmate is entitled "to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to ensure that the state created right is not arbitrarily abrogated." Ewell v. Murray, 11 F.3d 482, 488 (4th Cir. 1993) (citing Wolff v. McDonnell, 418 U.S. 539, 557 (1974)). Virginia prisoners have no liberty interest in any classification or good conduct time earning rate derived from the United States Constitution. Wolff v. McDonnell, 418 U.S. 539, 557 (1974); see also Mills v. Holmes, 95 F. Supp. 3d 924, 931-34 (E.D. Va. 2015) (analyzing Virginia statutes and VDOC regulations and concluding that "maintaining a particular ... earning level" for good conduct "is not a protected liberty interest in Virginia"). The Fourth Circuit has also so held that "[i]nmates have no protected liberty interest in remaining in or being assigned to a particular good conduct allowance level ...." West v. Angelone, 165 F.3d 22, [published in full-text format at 1998 U.S. App. LEXIS 27495] (4th Cir. 1998) (unpublished table decision). Virginia law, however, gives rise to a limited interest in consideration for parole, but not in parole release. See Burnette v. Fahey, 687 F.3d 171, 181 (4th Cir. 2012). Because the decision whether to grant parole is a discretionary one, "a prisoner cannot claim entitlement and therefore a liberty interest in the parole release." Gaston v. Taylor, 946 F.2d 340, 344 (4th Cir.1991) (en banc); see also Vann v. Angelone, 73 F.3d 519, 522 (4th Cir.1996).

Plaintiff and the defendants agree that when he entered the VDOC on June 29, 1994 that his anticipated parole eligibility date was July 4, 2010, and that, under Virginia Code § 53.1-199(D), he had to serve a 20-year period before he became parole eligible. Plaintiff does not point to any errors in the defendants' affidavit and the attached documents that accompanied their supplemental pleading—which provide a thorough, event by event explanation of his good time credits under the GCA, his earned sentence credits under the ESC, his loss of good time

14

credits for institutional convictions, and the other changes to his GCA and ESC Class Levels. Plaintiff neither provides any specific evidence as to how he determined how many days he had left to serve on June 29, 1994 when he entered VDOC custody to satisfy before he became parole eligible; nor does he address the impact of the numerous events that occurred after June 29, 1994 that changed the assumptions used to calculate his original anticipated parole eligibility date.

Instead, Plaintiff's arguments are conclusory in nature and unfounded because they are based upon "facts" that are demonstrably incorrect. Although he states he is aware that he must serve the new parole ineligible sentences first,[12] and that while serving those sentences he is not earning GCA good time credits [Dkt. No. 25 at 3], he does not explain if (and how) he accounted for these or any other events in arriving at the figures he used to argue that his anticipated parole eligibility date was incorrect. His flawed arguments are based upon his unfounded assumption that his original July 4, 2010 anticipated parole eligibility date, which itself was based assumptions, is immutable. His assumption is wrong and the arguments he posits premised upon that flawed assumption have no merit.

Plaintiff argues that the defendants' position that he had to serve 6,823 days after he was received into custody by the VDOC on June 29, 1994 is wrong and that he only had to serve 5,744 days. He states he determined the figure of 5,744 days is equal to 16 years based upon the number of days between when he entered the VDOC, June 29, 1994 and his original anticipated parole eligibility date, July 4, 2010. [Dkt. No. 31 at 2-3]. Aside from his failure to account for the changes in the assumptions upon which his anticipated parole eligibility date is calculated, his

---

[12] See Abdul-Hamid v. Angelone, No. 00-846-AM, 2001 U.S. Dist. LEXIS 27082, *4 (E.D. Va. Mar. 9, 2001) ("under VDOC policy, prisoners must serve their parole ineligible sentences prior to beginning or continuing their parole eligible sentences"), appeal dismissed, 22 F. App'x 207 (4th Cir. 2001).

math is incorrect. There are 5,849 days between those two dates, a difference of 105 days.[13] Even

if he had correctly calculated the number of days, his argument has no basis in fact because he

has failed not only to address or point out any error in the VDOC Court and Legal Section's

calculations, but also because his assertion that he had to only satisfy 16 years after he was

received in to the VDOC custody is wrong as well.

First, the statute requires that Henderson must serve 20 years, not 16 years, to be eligible

for a parole. The fact that it was calculated to be approximately 16 years in June 1994 does not

change the statutory requirement that he satisfy the 20-year period. As his first Legal Update,

dated July 14, 1994, warned—the July 4, 2010 anticipated parole eligibility date was based upon

assumptions and that the date could change if the assumptions changed.

Second, the original anticipated parole eligibility date, by its very nature was a projection,

and subject to fluctuation because it was calculated based upon assumptions (such as his GCA

Class Level) that were subject change.[14] As the undisputed specific facts detailed in the audit

submitted by the defendants establishes, there were a significant number of events that caused

fluctuations to Henderson's anticipated parole eligibility date over the last 28 years. For

example, Henderson's first institutional conviction on November 28, 1995 resulted in his lost 90

days of accumulated good time and being placed in GCA Class Level IV for 15 days, during

which he did not accumulate any good time credits. The loss of accumulated good time credits

and change in GCA Class Level pushed his anticipated parole eligibility date back from July 4,

---

[13] See https://www.timeanddate.com/date/dateadd.html (last viewed Oct. 12, 2022).

[14] Plaintiff's arguments prior to the defendants' supplemental pleading were focused, in part, on the assertion in the defendants' prior affidavit that he was earning sentence credits under the ESC, almost four years after he had finished satisfying his non-parole eligible offense. [Dkt. No. 25 at 7]. The defendants supplemental pleading [Dkt. No. 30-1 at 14] acknowledged the error in the prior affidavit that accompanied the March 7. 2-22 motion for summary judgment that indicated plaintiff was earning credit toward his sentence under the ESC at the "Class Level III at the rate of 1.5 days sentence credit for every 30 days served." [Dkt. No. 21 at 4]. The correction by the defendants has apparently given rise to Plaintiff's reliance on his argument about the "16 years."

2010 to August 10, 2010 because half of the accumulated lost good time credits (45 days) was added back into the determination of his anticipated parole eligibility date. Each event thereafter outlined in the audit represents a change to the assumptions built into the calculation of the previous anticipated parole eligibility date, which accounts for the numerous changes to his anticipated parole eligibility date. In sum, because the anticipated parole eligibility date fluctuates, each negative change in good time earning rates or earned sentence credits, or a loss of accumulated good time credits resulted in the anticipated parole eligibility date being pushed back.

Unlike the Plaintiff's unfounded and conclusory assertions, the defendants audit explains how the VDOC Court and Legal Section calculated the 20-year mandatory period that the statute requires Henderson satisfy before he can be considered for parole. The defendants started with the 20-year period (7305 days), and then credited Henderson with 385 jail credit days and half of his 192.5 jail accumulated good time credits before he was received into the VDOC. The VDOC then subtracted the total of the jail credit days and half of the jail good time (385 days + 96.25 days = 481.25 days) from the 20 years, which reduces the 20-year period from 7305 days to 6823 days (7305 days - 481.25 days = 6823.75 days).[15] The defendants' audit then explains each of the subsequent events that caused his anticipated parole eligibility date to be advanced or pushed back as a result of his loss of good time credits because of a conviction for an institutional

---

[15] The VDOC Court and Legal Section computed the 20-year period as 7305 days, which was reduced to 6,823 days (18 years, 8 months, and 6 days), see https://planetcalc.com/7933/ (last viewed Oct. 12, 2022), after subtracting jail credit and jail good time credits. The difference between the approximate 18 year and 8-month figure and the 16-year figure Plaintiff derived from his first Legal Update is likely due to the assumptions built into the anticipated parole eligibility date by the VDOC Court and Legal Section. The difference of one year and 8 months is approximately how much total good time credit the VDOC Court and Legal Section *assumed* Plaintiff would have accumulated if he had not lost good time credits for institutional convictions, been demoted from GCA Class Level III to GCA Class Level IV where he earned no good time credits, and when he incurred new parole ineligible sentences that interrupted his ability to earn good time credits under the GCA system.

infraction; changes in either his GCA or ESC Class Levels; or by the interruption of the 20-year period because of his conviction for parole ineligible sentences.

Plaintiff's assertion that his figure of 5,744 days "equals" 16 years has several problems. First, it does not square with an undisputable fact—there are 5849 days between June 29, 1994 and July 4, 2010.[16] In addition, he ignores the fact that the anticipated parole eligibility date he used to determine his 5,744 day figure, July 4, 2010, was a projection based upon assumptions— such as the rate at which he earns good time—that the VDOC Court and Legal Section assumed would remain constant over time. It is undisputed, however, that there were significant periods of time over the last 28 years that Plaintiff did not earn any good time credits that could have been applied to advance his anticipated parole eligibility date.

Plaintiff's other arguments in opposition to the motion for summary judgment allege, based on his 2007 Legal Update, that he had served 13 of the 16 years, which he concludes left him only three more years to satisfy before he was parole eligible. Consequently, after he finished serving his parole ineligible sentences from Buchanan and Wise County Circuit Courts in May 2018, he argues he only had three more years to serve before he was parole eligible and that he should have been considered for parole in May 2021. His argument does not explain how he derived any of his figures and, as noted herein, does not address the various events that reduced his GCA Class Level or resulted in his loss of good time credits. For example, he served a parole ineligible sentence from the Sussex County Circuit Court from January 14, 2000 to July 15, 2000. During that six months he earned no GCA good time credits that would be credited toward the determination of his anticipated parole eligibility date and caused his anticipated

---

[16] See https://www.timeanddate.com/date/durationresult.html (last viewed Oct 12, 2022). In addition, using one year is equal to 365 days, 16 years is equal to 5840 days (365 x 16 = 5840), which is 96 days more than plaintiff asserts amount to 16 years.

parole eligibility date to be pushed back to December 23, 2012. [Dkt. No. 30-1 at 7]. Upon completion of the parole ineligible offense, he began earning good time credits under the GCA and his anticipated parole eligibility date was advanced to June 25, 2011 from December 23, 2012. [Id. at 9].[17] The Sussex County conviction demonstrates how the anticipated parole eligibility date fluctuates and is also not something that the VDOC Court and Legal Section included in July 1994 when it assumed he would be earning good time credits at GCA Class Level III when they calculated his original anticipated parole eligibility date.[18]

Plaintiff has failed to provide any specific evidence that points out any error in the audit relied upon by the defendants, which establishes that his good time credits under the GCA and his earned sentence credits under the ESC were correctly calculated and that his current anticipated parole eligibility date of July 2, 2022 was likewise correctly calculated. Consequently, his claim that his due process rights were violated will be dismissed.

*B. Equal Protection*

Plaintiff mentions "equal protection" in the context of his assertion that he was denied due process, stating he had been denied "due process ... [and] the equal protection of the laws." [Dkt. No. 1 at 9]. He, however, alleges no facts in support of his allegation that he has been denied equal protection. To state an equal protection claim, he had to plead sufficient facts to "demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination."

---

[17] The same is true for the additional parole ineligible sentences imposed on Plaintiff by the Circuit Courts of Buchannan County and Wise County. From July 19, 2007 through May 7, 2018, Plaintiff did not earn any GCA good time credits that would have been credited toward the determination of his anticipated parole eligibility date during this approximately eleven-year period.

[18] Plaintiff also fails to acknowledge a significant event during this time frame—his demotion to GCA Class Level IV for over two years (714 days from July 15, 2000 through June 29, 2002), during which he did not earn any good time credits. [Dkt. No. 30-1 at 8].

Williams v. Hansen, 326 F.3d 569, 576 (4th Cir. 2003) (quoting Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001)). Plaintiff has not alleged that there are other similarly situated inmates, which renders his claim conclusory. See Kyles v. Garrett, 222 F. App'x 427, 429 (5th Cir. 2007) (conclusory allegations that "others similarly situated have been granted parole" insufficient to state an equal protection claim on behalf of a "class of one"). Indeed, he does not explain how he was treated any differently than any other inmates. Desper v. Clarke, 1 F.4th 236, 249 (4th Cir. 2021) (citing Nordlinger v. Hahn, 505 U.S. 1, 10 (1992)); see also Gallagher v. Pontiac School Dist., 807 F.2d 75, 79 (6th Cir. 1986) (because plaintiff "never explains how he was treated any differently from any similarly situated" persons "[t]he essence of his claim does not constitute a valid equal protection challenge."). Since he has not identified a similarly situated inmate that has been treated any differently from him, his claim will be dismissed.[19]

---

[19] See, e.g., Hall v. Callahan, 727 F.3d 450, 457 (6th Cir. 2013) (dismissing equal protection claim because plaintiffs failed to identify similarly situated individuals and explain how he was treated differently than similarly situated individuals) (citation omitted); Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006) (affirming dismissal of an equal protection claim because the plaintiff did "not allege the existence of similarly situated individuals") (citing Levenstein v. Salafsky, 414 F.3d 767, 776 (7th Cir. 2005) (affirming judgment for the defendant on an equal protection "class of one" claim by plaintiff who alleged he had been constructively discharged, because the plaintiff failed to identify another similarly situated individual who had been treated differently).

*C. Cruel and Unusual Punishment*

Plaintiff's final allegation is that the defendants' failure to correct the miscalculation of his anticipated parole eligibility date subjected him to cruel and unusual punishment because he was not considered by the parole board in 2021. [Dkt. Nos. 1 at 9, 25 at 5]. His cruel and unusual claim is predicated on his alleged due process violation that the defendants failed to correct his miscalculated anticipated parole eligibility date. Because the due process claim has no merit, the cruel and unusual punishment claim likewise has no merit. The undisputed evidence before the Court establishes that the Plaintiff's correct anticipated parole eligibility date was July 2, 2022.

### IV. Conclusion

The defendants have established that there is no evidence upon which a jury could reasonably find for Plaintiff on his claims based upon the allegedly miscalculated good time credits, earned sentence credits, or the anticipated parole eligibility date. The defendants' motion for summary judgment [Dkt. No. 20] will be granted, and the Plaintiff's motion to dismiss the defendant's motion for summary judgment [Dkt. No. 24] will be denied. An appropriate Order and judgment shall issue.

Entered this 14th day of _____Nov._____ 2022.

Alexandria, Virginia

T. S. Ellis, III
United States District Judge